263 So.2d 859

**STATE of Louisiana**

v.

**Lee DANIELS.**

**No. 51577.**

June 5, 1972.

Rehearing Denied June 29, 1972.

Dissenting Opinion June 30, 1972.

Ponder & Ponder, L. B. Ponder, Jr., Amite, for defendant-appellant.

Palmer & Palmer, Charles B. W. Palmer, Amite, for amicus curiae.

Jack P. F. Gremillion, Atty. Gen., Harry H. Howard, Asst. Atty. Gen., Leonard E. Yokum, Dist. Atty., William M. Quin, Asst. Dist. Atty., for plaintiff-appellee.

McCALEB, Chief Justice.

On this appeal from his conviction for attempted aggravated rape, for which he was sentenced to serve five years at hard labor in the State Penitentiary, Lee Daniels relies on twelve bills of exceptions to obtain a reversal of the conviction.

Bill No. 1 was reserved when the trial court overruled a motion to quash the indictment. The grounds for the motion are three-fold, to-wit: 1. The indictment fails to charge an offense which is punishable under a valid statute, and does not conform to the constitutional requirements that the defendant should be informed of the nature and circumstances of the charge in the indictment; 2. The indictment is duplicitous in that it contains a number of offenses in general and none specifically; and 3. The State fails to give a sufficient bill of particulars.

1. The indictment recites that on about May 30, 1970 the appellant "attempted to commit aggravated rape upon Patricia Harrison, in violation of Articles 27 and 42 of the Louisiana Criminal Code."

The indictment is drawn in the short form for an "attempt" as authorized by C.Cr.P. Art. 465, and it adheres strictly to the form therein set out. The validity and constitutionality of short form indictments and bills of information, when used in connection with a bill of particulars, has so often been upheld by this Court that it is hardly nec-

essary to cite authority therefor. Nevertheless, since defense counsel in the instant case has again raised the issue, although he has not argued it seriously, we mention a few of the pertinent decisions holding that the statute authorizing the short form and its use is constitutional. State v. Nichols, 216 La. 622, 44 So.2d 318 (1950); State v. Eyer, 237 La. 45, 110 So.2d 521 (1959); State v. Fulghum, 242 La. 767, 138 So.2d 569 (1962), cert. den., 371 U.S. 5, 83 S.Ct. 82, 9 L.Ed.2d 50; State v. Howard, 243 La. 971, 149 So.2d 409 (1963); and State v. Cooper, 249 La. 654, 190 So.2d 86 (1966).

2. The assertion that the indictment is duplicitous is patently without substance. R.S. 14:42 defines the crime of aggravated rape and R.S. 14:27 condemns attempts to commit a crime. Manifestly, the indictment sets out the commission of the crime of attempted aggravated rape, and only that crime.

■ 3. Likewise, appellant's charge that the State failed to give a sufficient answer to a motion for a bill of particulars is groundless. The motion to quash the indictment in which the assertion is made was filed on the same day as the motion for a bill of particulars was filed. Obviously, the State then had not even filed its answer thereto. Subsequently, the answer was filed. All of the information sought in the motion for a bill of particulars was given, save with regard to whether the State planned to use any oral inculpatory or exculpatory remarks, and the substance thereof.

In response to these questions the State answered that it was not required to answer them at that time.

■ Under our well-settled jurisprudence the rule which permits a pretrial inspection by an accused of written confessions or inculpatory statements does not apply to oral ones. State v. Lea, 228 La. 724, 84 So.2d 169 (1955), cert. den. 350 U.S. 1007, 76 S.Ct. 655, 100 L.Ed. 869; State v. Bickham, 239 La. 1094, 121 So.2d 207 (1960), cert. den. 364 U.S. 874, 81 S.Ct. 123, 5 L.Ed.2d 98; State v. Manuel, 253 La. 195, 217 So.2d 369 (1968); and State v. Pesson, 256 La. 201, 235 So.2d 568 (1970).

Because appellant was not entitled to information concerning oral statements, and because the other information sought in the motion for a bill of particulars was furnished by the State in its answer thereto, the answer was sufficient.

The motion to quash the indictment was properly overruled.

On the day of the trial the State, in conformity with the provisions of C.Cr.P. 768,[1]

1. That article provides that "If the state intends to introduce a confession or inculpatory statement in evidence, it shall so advise the defendant in writing prior to beginning the state's opening statement * * *."

notified appellant's counsel that it intended to introduce oral inculpatory statements made by appellant. At the commencement of the trial defense counsel moved orally to suppress the verbal statements. It was overruled and Bill of Exceptions No. 2 was reserved.

The bill is not meritorious. Oral confessions and inculpatory statements are not subject to a motion to suppress. Such a motion may be directed only to written confessions or written inculpatory statements. C.Cr.P. Art. 703.

It also appears that when the motion to suppress was overruled, defense counsel sought a continuance which was denied. In this Court he argues that the trial court erred in failing to grant the continuance to permit him to file timely a motion to suppress the statements. The motion was overruled, and properly so. Inasmuch as the oral statements were not subject to a motion to suppress, and since notice of the statements was served on defense counsel within the time set forth in C.Cr.P. Art. 768, no continuance was necessary. Besides the motion for a continuance was not in writing and verified as is required by C.Cr.P. Art. 707.

The trial court did not err in overruling the motion to suppress and the motion for a continuance.

Bill of Exceptions No. 3 was not orally argued, nor is it mentioned in appellant's brief here. We presume that it has been abandoned.

Bills of Exceptions No. 4, 5, 6, 7 and 8 were reserved when, over defense counsel's objection, the court permitted certain witnesses to be questioned concerning prior arrests of the accused. The witnesses were defense witnesses, called for the purpose of establishing the good reputation of appellant. After testifying on direct as to his good reputation, they were asked on cross-examination whether they were aware that appellant had formerly been arrested for driving while intoxicated and for attempted rape.

There was no error in permitting the questions. In State v. Simpson, 247 La. 883, 175 So.2d 255 (1965), we stated:

"It is well settled in the jurisprudence that where a witness for the defendant testifies as to his good character and reputation, the witness may be questioned as to particular facts and as to previous arrests of the accused on whose behalf he is testifying. State v. Powell, 213 La. 811, 35 So.2d 741; see State v. Thornhill, 188 La. 762, 178 So. 343."

See also State v. Pain, 48 La.Ann. 311, 19 So. 138 (1896); State v. LeBlanc, 116 La. 822, 41 So. 105 (1906); State v. Oteri, 128 La. 939, 55 So. 582 (1911); and State v. Jacobs, 195 La. 281, 196 So. 347 (1940).

In Bill of Exceptions No. 8 it is further asserted that the trial court erred in

not permitting defense counsel to conduct "re-redirect" examination of Booker T. Lawson, a defense witness who had testified in chief as to appellant's reputation. Much discretion is vested in the trial judge in these matters. The record reflects that he had already been very lenient in the questioning of this witness, and had permitted a re-direct examination. It was only when defense counsel stated that no new matter would be brought out on the "re-redirect" examination that he refused counsel's request, stating that it could only be repetitious. Moreover, the record reveals that the matter being elicited in this series of questioning was not really pertinent to the issues and was not particularly helpful to the case of either the State or or the appellant. No prejudice resulted from the court's ruling.

Bills of Exceptions Nos. 9 and 10 were reserved when the trial court refused to give two special requested charges (Nos. 2 and 5) to the jury.

Requested special charge No. 2 reads:

"Affirmative testimony of express oral comments of the neighbors, friends and acquaintances of the accused upon the reputation of the accused is not always required and that evidence that the character of the accused had never been de-

nied or doubted or even discussed or spoken of among his acquaintances, though negative in form, is always admissible and often of the highest value."

 The charge was properly refused. In our opinion it was not wholly correct.[2] We find no law, for instance, which holds that evidence that an accused's character has never been denied, doubted or discussed or spoken of is often of the "highest value."

 True, it is *admissible*, and testimony to this effect *was* permitted to be given by appellant's character witnesses. Besides, it would appear that such a charge as that proffered by defense counsel might well be considered as a comment on the evidence by the judge, which is prohibited by C.Cr.P. Art. 806.

Requested special charge No. 5 reads:

"In the deliberation, Gentlemen, you should be convinced of beyond a reasonable doubt in the veracity and truthfulness of the prosecuting witness and if it is impeached upon one or more issues or if it is unreasonable then you are at liberty to disregard part or all of the testimony as you become the sole and only judges of the law as given you by this court and of the facts and it is within your province to believe or disbelieve any witnesses's tes-

---

2. C.Cr.P. Art. 807 provides in part that: "A requested special charge shall be given by the court if it does not require qualification, limitation, or explanation, and *if it is wholly correct and pertinent.* It need not be given if it is included in the general charge or in another special charge to be given." (Emphasis ours)

timony that you hear on the witness stand and I charge you that you should take into consideration the interest that the accomplice has, the hope of reward that he may have, the hope of acquittal the anger and any other matters that may affect his credibility."

Firstly, it was not suggested, so far as we can tell, that there was an accomplice to the crime charged, much less that an accomplice testified. Hence, that part of the requested charge was not pertinent. Secondly, the correct portions of the requested charge were fully covered by the general charge with greater clarity and specificity.

Bill of Exceptions No. 11 also challenged the district court's refusal to give a requested special charge. It was not orally argued and it is not mentioned in appellant's brief. Hence, we presume it has been abandoned.

Bill of Exceptions No. 12 was reserved when the trial court denied appellant's motion for a mistrial based on improper statements of the prosecuting attorney during closing argument.

The assailed statements occurred in close sequence in the closing remarks of the prosecutor, and were as follows:

"BY MR. QUIN: . . . Lee Daniels testified he didn't stop his truck in front of Patricia's house, it is only natural that he would testify in this manner. He also testified he did not commit aggravated rapes on Patricia Harrison, and if I were charged with the crime that he is charged with I wouldn't admit it either. I can't think of a more horrible thing for a grown man to commit on a small ten year old girl.

"MR. PONDER: I object at this point to the Assistant District Attorney appealing with a horror story and giving his opinion, and we object to it as being prejudicial against the defendant and ask for the entry of a mistrial.

\* \* \* \* \* \*

"BY MR. QUIN: Now, the only other testimony to be noted that was different from that of the little girls, was testimony by whom? Aunt Rosa, the wife of Lee Daniels, who loved Lee Daniels very much, according to her own testimony, and that they had been married for 39 years. If I were she and I loved my husband I would stand by him through thick and thin, as she had promised when she said 'I take him for better or for worse', she took him for better and now she's got him for worse.

"MR. PONDER: If the Court please, I would like for an objection to be recorded to the last statement of the Assistant District Attorney with reference to 'For better or for worse, etc.'

"MR. PONDER: I ask the Court to enter a mistrial relative to commutation [comment] on the evidence."

We find no error in the rulings. The prosecuting attorney is permitted, in fact it is his duty, to comment on, summarize and give his appreciation of the evidence in arguing the facts to the jury. It is the judge only who is restrained from commenting on the evidence. While we do not condone or encourage such remarks as the last one quoted above, we do not think that it is sufficiently inflammatory and beyond the realm of fair comment on the evidence as to warrant the granting of a new trial.

The bill is without merit.

Having disposed of all of the bills of exceptions presented for our review, we believe in pertinent to comment on certain arguments made orally and in defense counsel's brief to this Court.

On this appeal, for the first time, appellant attacks the composition of the jury, asserting that women were totally excluded therefrom. No objection having been made in the trial court, there is no perfected bill on the complaint, and therefore no evidence before us concerning it. In any event, even if we could take judicial cognizance of an absence of women from the jury venires and juries, we have held that our law, which permits the calling for jury service only those women who have filed with the clerk of court a written declaration of their desire to be subject to jury service (C.Cr.P. Art. 402), is not irrational and discriminatory. State v. Reese, 250 La. 151, 194 So.2d 729 (1967), cert. den. 389 U.S. 996, 88 S.Ct. 485, 19 L.Ed.2d 495; State v. Comeaux, 252 La. 481, 211 So.2d 620 (1968); State v. Pratt, 255 La. 919, 233 So.2d 883 (1970); State v. Alexander, 255 La. 941, 233 So.2d 891 (1970);[3] State v. Sinclair, 258 La. 84, 245 So.2d 365 (1971); State v. Millsap, 258 La. 883, 248 So.2d 324 (1971); and State v. Amphy, 259 La. 161, 249 So.2d 560 (1971).

The appellant also complains in the brief that the court improperly admitted hearsay testimony by Deputy Sheriff Johnny Robinson. The testimony concerned statements (at different times) made to the Deputy by the victim's mother and by the coroner. We find in the record no perfected bills of exceptions relative to the testimony. It is, therefore, not before us, and there is, in this respect, nothing for us to review.

For the reasons assigned the conviction and sentence are affirmed.

BARHAM, J., concurs in the decree.

3. The United States Supreme Court granted certiorari in this matter and reversed the conviction of the accused, on grounds other than the absence of women jurors. It specifically declined to pass on the validity of the provisions of C.Cr.P. Art. 402. 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972).

BARHAM, Justice, joined by TATE, Justice, dissenting from Refusal to Grant a Rehearing.

We are presented with the issue of whether this defendant, a *male*, can have an indictment declared null and a conviction and sentence reversed upon the basis that *females* were excluded (C.Cr.P. Art. 402) from both the grand and petit jury venires and of course from the juries themselves which returned the indictment and the conviction.

In Alexander v. Louisiana, 405 U.S. 625, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972), the majority pretermitted the question of the unconstitutionality of Louisiana Code of Criminal Procedure Article 402 "because petitioner's conviction had been set aside on other grounds". The dissent in that case considered that article unconstitutional. The article (see also La.Const. Art. VII, Sec. 41) provides that no woman shall be selected for jury service unless she makes a written application to serve. Although Hoyt v. Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961), appeared to sanction laws similar to our Article 402, recent United States Supreme Court jurisprudence, including Alexander v. Louisiana, supra, clearly indicates that the Hoyt decision is in jeopardy. In Peters v. Kiff, Warden, — U.S. —, 92 S.Ct. 2163, 33 L. Ed.2d 83 (1972), that court, with only three justices dissenting, held that a *white*

could challenge a jury from which *blacks* were discriminatorily excluded. But the sweeping language in that case (following the explicit pretermitting of the question of sex discrimination in Alexander v. Louisiana) casts doubt upon the constitutionality of our statutory and constitutional exclusion of a large segment of our population from jury service on the basis of sex. Moreover, if our exclusion on account of sex is unconstitutional, under Peters v. Kiff any defendant, male or female, may complain of that discriminatory practice. In Peters v. Kiff the court said:

"Moreover, the Court has also recognized that the exclusion of a discernible class from jury service injures not only those defendants who belong to the excluded class, but other defendants as well, in that it destroys the possibility that the jury will reflect a representative cross-section of the community. In Williams v. Florida, 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed. 2d 446 (1970), we sought to delineate some of the essential features of the jury that is guaranteed, in certain circumstances, by the Sixth Amendment. We concluded that it comprehends, *inter alia*, 'a fair possibility for obtaining a representative cross-section of the community'. 399 U.S., at 100, 90 S.Ct., at 1906. Thus if the Sixth Amendment [*trial* by jury] were applicable here, and petitioner were challenging a post-*Duncan* petit jury, he would clearly have standing to challenge the systematic

exclusion *of any identifiable group from jury service.* [Emphasis supplied.]

"The precise question in this case, then, is whether a State may subject a defendant to indictment and trial by grand and petit juries that are plainly illegal in their composition, and leave the defendant without recourse on the ground that he had in any event no right to a grand or petit jury at all. We conclude, for reasons which follow, that to do so denies the defendant due process of law.

" * * * Similarly, if a State chooses, quite apart from constitutional compulsion, to use a grand or petit jury, due process imposes limitations on the composition of that jury.

" * * *

"These principles compel the conclusion that a State cannot, consistent with due process, subject a defendant to indictment or trial by a jury that has been selected in an arbitrary and discriminatory manner, in violation of the Constitution and laws of the United States. Illegal and unconstitutional jury selection procedures cast doubt on the integrity of the whole judicial process. They create the appearance of bias in the decision of individual cases, and they increase the risk of actual bias as well.

" * * *

"But the exclusion from jury service of a substantial and identifiable class of

citizens has a potential impact that is too subtle and too pervasive to admit of confinement to particular issues or particular cases. * * *

" * * * When any large and identifiable segment of the community is excluded from jury service, the effect is to remove from the jury room qualities of human nature and varieties of human experience, the range of which is unknown and perhaps unknowable. It is not necessary to assume that the excluded group will consistently vote as a class in order to conclude, as we do, that their exclusion deprives the jury of a perspective on human events that may have unsuspected importance in any case that may be presented."

Footnote 12, dropped at this point, pertinently states:

"In rejecting, for the federal courts, the exclusion of women from jury service, this Court made the following observations, which are equally relevant to the exclusion of other discernible groups:

" 'The truth is that the two sexes are not fungible; a community made up exclusively of one is different from a community composed of both; the subtle interplay of influence one on the other is among the imponderables. To insulate the courtroom from either may not in a given case make an iota of difference. Yet a flavor, a distinct quality is lost if either sex is excluded.' Ballard v. United

States, 329 U.S. 187, 193–194, 67 S.Ct. 261, 264, 91 L.Ed. 181 (1946) (footnote omitted)."

My Brother Tate and I are of the opinion that under these pronouncements numerous criminal prosecutions in Louisiana may stand in jeopardy unless juries are selected without discrimination as to sex.

This rehearing should be granted so this court can quickly speak upon that serious issue.