307 So.2d 594 (1975)
STATE of Louisiana
v.
David BANKS.
No. 55224.
Supreme Court of Louisiana.
January 20, 1975.
Rehearing Denied February 21, 1975.
*596 Joel B. Dickinson, Joel B. Dickinson & Associates, Baton Rouge, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie Brown, Dist. Atty., Richard E. Chaffin, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
David Banks and Willie J. Banks were charged in a bill of information filed on April 30, 1973 with distribution of heroin (R.S. 40:966, subd. A(1)) to Charles Spillers on October 18, 1972; the time of the sale was fixed in a bill of particulars at about 6:45 p. m. The case of Willie J. Banks was severed, and David Banks was found guilty by a jury on January 7, 1974, and subsequently sentenced to twenty-one years at hard labor.
Nine bills of exceptions are urged, all related, directly or indirectly, to the use by the prosecution of evidence of other offenses in the trial of the case.
Defense counsel disclosed to the jury that David Banks had been tried (about three months before the instant trial) on another drug offense (distribution of heroin on December 20, 1972); that jury had failed to agree on a verdict. In that case, counsel argues in brief, he was served with a notice that the State would attempt to use evidence of other offenses in the prosecution. But in the instant case, states counsel, he never received notice prior to trial that the State intended to use evidence of other offenses. This alleged failure, and the subsequent use of other offense evidence in the State's case in chief, is the basis of the first three bills of exceptions.
Except for two witnesses who identified the contraband drug, undercover agent Spillers was the only prosecution witness who testified on the case in chief. He not only testified that he purchased heroin from Banks at about 6:45 p. m., but that he also purchased heroin from the defendant at 8:30 p. m. the same day, which was the time specified in the notice of intention to use other offenses filed by the State.
The first and third bills of exceptions were based on counsel's failure to receive the notice of intention to use other offenses. The bills are without merit. The notice is in the record, filed on June 5, 1973, having been served on the lawyer who was then counsel of record on June 4, 1973. Defendant employed present counsel in October, 1973. He is charged with knowledge of the pleadings in the record. His contention that service of the notice six months before trial violated the requirement of "reasonable" notice of State v. Prieur, 277 So.2d 126 (La.1973), is insubstantial.
The record does not disclose the reasons for the second bill of exceptions; defendant argues in brief that evidence of the second offense was not relevant to show "knowledge and intent," since, under R.S. 15:444, no further proof of intent is required than that "accused voluntarily did the act." Nor were reasons stated by counsel for his objection at the trial to the evidence of the second sale, which objection forms the basis for Bill of Exceptions No. 3.
In spite of the words in R.S. 40:966 that "it shall be unlawful for any person knowingly or intentionally. . ." to do the prohibited acts, the statute requires no more than general criminal intent. (See R.S. 14:11: ". . . in the absence of qualifying provisions, the terms `intent' and `intentional' *597 have reference to `general criminal intent.'"). Knowledge and intent did not become an issue in this case. (State v. Medlock, 297 So.2d 190 (La.1974), is distinguishable: Medlock involved a conviction for possession with the intent to distribute, while the instant charge is distribution of heroin). The notice filed by the prosecution on June 5, 1973 stated, in an attempt to comply with the second procedural requirement of Prieur,[1] that the extraneous offense would be used to prove intent. The rules of Prieur were not meant to be used as additional, technical procedures sacramental to a valid conviction. Substantial compliance with this procedure designed to insure a fair trial when "other offenses" are involved will not be penalized.
We might have said, in Prieur, instead of requiring the State to "specify the exception to the general exclusionary rule upon which it relies for the admissibility of the evidence of other acts or offenses", that the State would be required to show the relevance of the other offenses, because relevant evidence is admissible unless specifically excluded. See Jones, "Other Crimes Evidence," 33 La.L.Rev. 614 (1973). It is sometimes difficult, at a time long before the trial begins, to articulate the reasons that will make certain evidence relevant. In the absence of prejudice to the defendant, we hold that the failure of the State to include the correct reason for the admissibility of other offense evidence will not invalidate a conviction.
The specific issue in the case before us was one of identity. The defendant contended that there was another David Banks in the vicinity; that he, the defendant, had never sold any narcotics to any person, including Spillers; and that on the evening of the offense he was at home building a dog run in his back yard. Even if the evidence was not admissible to prove "intent," it was relevant and admissible to prove the identity of the accused.
The probative value of the second offenseso close in time to the first, involving the same parties at the same place in an almost identical transactionwas significant. There was no undue prejudice to the defendant in the use of such evidence, and no merit in Bills of Exceptions Nos. 1, 2 and 3.
Bill of Exceptions No. 4 was reserved to the court's refusal to permit the defendant to impeach a State's witness before she was called to testify. The defense anticipated that Annette Kelly would be called as a rebuttal witness, and placed Jo Jo Williams on the witness stand for the announced purpose of impeaching the witness Kelly's testimony. The trial judge permitted the defendant, out of the presence of the jury, to adduce from Williams the "impeaching" testimony. That testimony was that Jo Jo Williams, a black man, had, in times past, "dated" Annette Kelly, had "lived at her house," and had seen her use marijuana.
The trial judge properly excluded this testimony from the jury. The general rule, of course, is contained in R.S. 15:484:
"Before a witness has been sworn he can be neither corroborated nor impeached, nor is testimony to establish the credibility of a witness admissible until that credibility has been attacked."
In this case, however, aware that the defendant would not ordinarily be given the opportunity to put on testimony tending to impeach rebuttal witnesses (but see C.Cr.P. 765(5), the judge was correct in allowing the defendant to adduce his "impeaching" evidence out of the presence of the jury. The evidence which the defendant intended to use to attack the anticipated *598 testimony of Annette Kelly inquired into "particular acts, vices or conduct" of the witness Kelly. It was not admissible impeaching testimony. State v. Burch, 261 La. 3, 258 So.2d 851 (1972). R.S. 15:490 and 15:491 provide:
"The credibility of a witness may be attacked generally, by showing that his general reputation for truth or for moral character is bad, or it may be attacked only in so far as his credibility in the case on trial is concerned."
"When the general credibility is attacked, the inquiry must be limited to general reputation, and can not go into particular acts, vices or courses of conduct."
There is no merit to Bill of Exceptions No. 4.
Bill of Exceptions No. 5 was reserved during the cross-examination of Jesse Williams, a character witness called by the defendant. When the defendant had taken the stand he was questioned by his counsel about his work and family life. He was at the time of the trial thirty-one years old. He testified that he had been convicted of misdemeanor theft at age seventeen and again at age twenty-three. He testified that he had been "picked up" when the authorities "had me for the wrong man." He denied knowing Spillers in October of 1972; denied seeing him at the time; testified that Spillers had approached him in 1973 to attempt to buy heroin. He testified that, since his birthday was on October 17, 1972 he remembered that the following day, the day on which the offense was alleged to have occurred, he was occupied building a run for his dog. He denied that he had ever dealt in narcotics and denied having ever used narcotics in any form.
When Jesse Williams, the last defense witness, was called he testified that the defendant had a good reputation in the community and that he had never heard "anybody discuss anything bad about him." On cross-examination, the character witness was asked whether he knew the defendant had been twice convicted of theft. The witness Williams did not. When asked whether that knowledge would have changed Williams' opinion about the defendant's reputation, the witness answered that it would have made no difference.
At this point, the district attorney asked Williams whether he knew that the defendant had been arrested for simple burglary in 1968. Bill of Exceptions No. 5 was reserved when the trial judge overruled defense objections to this question.
The defendant argues that evidence of previous arrests of the defendant was inadmissible. This much is true. Evidence of prior arrests is not admissible for the purpose of impeaching the credibility of witnesses. R.S. 15:495 provides:
"Evidence of conviction of crime, but not of arrest, indictment or prosecution, is admissible for the purpose of impeaching the credibility of the witness, but before evidence of such former conviction can be adduced from any other source than the witness whose credibility is to be impeached, he must have been questioned on cross-examination as to such conviction, and have failed distinctly to admit the same; and no witness, whether he be defendant or not, can be asked on cross-examination whether or not he has ever been indicted or arrested, and can only be questioned as to conviction, and as provided herein."
But the provisions of R.S. 15:495 do not precisely fit the case before us. To be precise, evidence of prior arrests was not offered. It is no real answer to the problem, however, merely to point out that a character witness was being cross-examined about his knowledge of facts from which a reputation is made. Although the State was not actually offering evidence of convictions, when the prosecutor asked, "Did you know . . . he was arrested for simple burglary?" and "if I tell you. . . he was arrested on two counts of *599 burglary and two counts of forgery and felony theft . . .", he was in effect conveying information to the jury, almost as surely as if he was producing evidence of prior arrests.
Nevertheless, in spite of the prohibition in R.S. 15:495, when the question has arisen in this court, we have held that it is not reversible error for the prosecution to ask a character witness for the defendant about his knowledge of prior arrests. State v. Daniels, 262 La. 475, 263 So.2d 859 (1972); State v. Simpson, 247 La. 883, 175 So.2d 255 (1965).
The ruling in the Daniels case has been criticized (34 La.L.Rev. 447 (1974)) for the reason that no distinction was made between a question which inquires solely whether the witness had heard of prior arrests, and a question which inquires whether the witness had knowledge of the fact that the defendant had been previously arrested. The law concerning character witnesses and cross-examination of character witnesses is full of anomalies. See Michelson v. U. S., 335 U.S. 469, 69 S.Ct. 213, 93 L.Ed. 168 (1948).
"It is a merciful dispensation to the accused of hitherto blameless life to allow him to open this door of character. To those with spotted records, however, it is a far more dangerous move to open this door than might at first glance be assumed." (McCormick on Evidence, § 191, 456 (Cleary Ed. 1972).
McCormick further states: "Logically, the courts hold that the witness may not be asked `if he knows' that the accused has committed such other crimes. As to indictments or other official charges, verdicts, convictions, or repeated arrests, or sentences for crime, it would seem allowable to ask the witness if he `knows' of these, but some decisions require the `have you heard' form of inquiry as to these matters also." (Page 457).
We do not have before us the problem of a bad faith inquiry about prior arrests. The real problem is whether the State should be relatively helpless in cross-examining witnesses who testify to the good reputation and good character of an accused in order to determine whether the witnesses are aware of facts which form a reputation, or, as in the case before us, whether the character witness' concept of a good reputation deviates so far from the standard that the witness' opinion would not be affected by knowledge of prior criminal activity.
Although the position is not without danger of abuse, and may be illogical in view of the prohibition against the introduction of evidence of prior arrests, we conclude that neither law nor justice permits a defendant to foist a spurious reputation upon a jury because the State is so limited in its cross-examination of the character witnesses that it may not inquire about knowledge of prior arrests. State v. Ghoram, 290 So.2d 850 (La.1974), cited by the defendant is not applicable. In Ghoram, the defendant himself was, on cross-examination, repeatedly asked about prior arrests.
There is no merit to Bill of Exceptions No. 5.
Bills of Exceptions Nos. 6 and 7 were reserved to the rebuttal testimony of Spillers and Early. In order to rebut the defendant's testimony that he had never dealt in drugs, the State adduced evidence from Spillers that Spillers also purchased illicit drugs from the defendant on October 27, 1972, and assisted Early, a federal agent, in making two purchases of illicit drugs from the defendant on January 19, 1973. Defendant argues that Ghoram, as well as Prieur, prohibited the introduction of this evidence.
There can be no doubt of the relevance of the evidence of the other offenses described in the testimony of Spillers and Early on rebuttal. Not only was it relevant to the defense of mistaken identity, but it directly contradicted the contention *600 of the defendant that he had never dealt in dope and had never sold any to Spillers. Contradiction is one means of rebutting testimony of a witness. State v. Garrison, 260 La. 141, 255 So.2d 719 (1971); State v. Poe, 214 La. 606, 38 So. 2d 359 (1948).
The rebuttal evidence adduced from Spillers and Early was evidence of past acts of misconduct, which were, like the 8:30 p. m. sale on October 18, 1972, so similar in nature, so close in time and so nearly identical in parties, that the probative value of the evidence was great. It did not merely show the bad character of defendant. There is no complaint by the defendant that he was unfairly surprised by the use of such evidence.
Defendant's principal argument is that he was not furnished in advance of trial with the written notice required in Prieur that the State intended to introduce evidence of the offenses which occurred on October 27, 1972 and January 19, 1973.
The State in this case did not attempt to avoid the use of the notice required in Prieur. Notice was given concerning the second sale of October 18. It is, however, impossible for the State to anticipate every defense which might be raised on the trial of a case. When, as here, evidence of other acts of misconduct become relevant after defendant's case, and would be admissible on rebuttal except for the fact that advance notice of intention to adduce evidence of other offenses had not been given to the defendant, we will not reverse for the failure, under such circumstances, to comply with the requirements of Prieur.
There is no merit to Bills of Exceptions Nos. 6 and 7.
Bills of Exceptions Nos. 8 and 9 were reserved as a result of Annette Kelly's testimony. Bill 8 was reserved when the trial court overruled the defense objection to the calling of this witness as a rebuttal witness. Defendant argued that the witness Kelly should have been called on direct examination since she was present with Spillers when the two purchases of October 18 were made from the defendant.
We find no abuse of discretion in the trial judge's allowing the witness Kelly to testify on rebuttal. While her evidence would have been properly admissible on the case in chief, it was also proper rebuttal testimony. She contradicted defendant's testimony that he had never sold narcotics to anyone, including Spillers. Her testimony was relevant to rebut defendant's contention that this was a case of mistaken identity. She contradicted defendant's assertion that he was at his home at the time of the sale on October 18. "Rebutting evidence is that which is offered to explain, repel, counteract or disprove facts given in evidence by the adverse party." State v. Monroe, 205 La. 285, 17 So.2d 331, 332 (1944).
There is no merit in Bill of Exceptions No. 8.
Bill of Exceptions No. 9 merely repeated the objection to the testimony by the witness Kelly about the sale from the defendant to Spillers at 8:30 p. m. on October 18. For the reasons found in the discussion of Bills of Exceptions Nos. 1 and 3, there is no merit to Bill of Exceptions No. 9.
The conviction and sentence are affirmed.
TATE, J., dissents and assigns reasons.
BARHAM, J., dissents with reasons.

Dissenting Opinion
TATE, Justice (dissenting).
I dissent primarily because the State, improperly in my opinion, reserved part of its case-in-chief for rebuttal testimony, after the defense had put on its case and when it could no longer present evidence to dispute the State's case. This is contrary to statutes, *601 to ancient jurisprudence, and to rules of fair play. La.R.S. 15:282; State v. Campbell, 263 La. 1058, 270 So.2d 506 (1972); State v. Davis, 246 La. 383, 164 So.2d 589 (1964); 2 Marr's Criminal Jurisprudence of Louisiana, Section 633 (1923).
In this regard, I refer primarily to Bill Nos. 8 and 9, taken to the admission of Annette Kelly's testimony. She was a witness to the transaction between the accused and the undercover agent, Spillers. If the reasons given for the admission of her testimony as rebuttal evidence are valid, then it permits the State to divide its witnesses between case-in-chief (against whom the accused can put on witnesses in defense) and rebuttal (against whom the accused cannot contest by further evidence), although both sets of witnesses are to the same event and effect.
However, the "other crimes" testimony in rebuttal complained of by Bill Nos. 6 and 7 is possibly an exception to the Prieur requirements and was possibly admissible.
Unlike Ghoram and other cases disallowing such testimony in rebuttal unless the Prieur notice is given, the present does not instance a prosecution effort to evade the Prieur guidelines through use of cross-examination to inject the issue. Here, the defense itself created the issue on its direct examination of the accused, by asking him if he had ever before been involved with Spillers or with dope.
Arguably, the Prieur guidelines could be limited to their shield function of protecting an accused against unfair use of other crimes for which he is not on trial. An accused should not be able to use the lack of the Prieur notice before trial as a sword by falsely claiming no other incident, and then relying on Prieur to keep from the jury any knowledge of his perjury. If so understood (as I think is the intent of the majority), the actual holding does not erode Prieur.
Nevertheless, I share the concern of my dissenting brother that the prosecution's failure to give notice of its intent to use its paid informer to prove the alleged other incidents (as well as those listed in the notice) may have been in aid of its tactics to put as much damaging evidence as possible in rebuttal, withholding it from the State's case-in-chief.
Again, the State's cross-examination of the accused's character witness as to other crimes seems once more to have been part of the State's tactics to assure a conviction of the single offense presently charged by bringing in as much evidence as possible of the accused's involvement in other incidents. While by itself this might not constitute reversible error, it is part of the prosecution tactics which, from the record as a whole, bring into question whether the accused received a fair trial.
The prosecution's failure to convict in the earlier trial, when sufficient of the jury did not accept as credible the testimony of the undercover agent, does not in my opinion excuse its tactics to secure a conviction here by borderline tactics.
The suggestion in brief that the American Bar Association Standards Relating to Criminal Justice do not apply, seems to me to ignore the ethical basis upon which they are founded. It ignores also the traditional and ethical duty of the prosecutor, not to convict, but simply to present on behalf of the people the State's case fairly and to leave to the juryon the basis of a fair trial, and of evidence permissibly before it by lawthe issue of the defendant's guilt or innocence.
I respectfully dissent.
BARHAM, Justice (dissenting).
My first of several objections to the majority's disposition of the bills of exceptions presented for the Court's review concerns the treatment and resolution of Bill of Exceptions No. 5; in my opinion, this bill of exceptions presents glaring error *602 sufficient to mandate a reversal of the defendant's conviction and sentence.

BILL OF EXCEPTIONS NO. 5
The majority approves cross-examination of a defense character witness as to his knowledge of prior arrests of the defendant, notwithstanding its admission that the defendant is correct, in light of La.R.S. 15:495, in arguing the inadmissibility of evidence of previous arrests. The majority concludes that "* * * neither law nor justice permits a defendant to foist a spurious reputation upon a jury because the State is so limited in its cross-examination of the character witnesses that it may not inquire about knowledge of prior arrests. * * *" The majority also notes that in spite of the prohibition of La.R.S. 15:495, when the same issue considered in this bill of exceptions had previously arisen in this Court, we held that it is not reversible error for the State to ask a character witness for the defendant about his knowledge of the defendant's prior arrests. The majority supports its observation by citation of two cases, State v. Daniels, 262 La. 475, 263 So.2d 859 (1972) and State v. Simpson, 247 La. 883, 175 So.2d 255 (1965).
Seeking to determine what a character witness knows rather than what he has heard or learned about the defendant in the community is improper inquiry; such a witness can testify only as to what he has heard, not as to what his opinion is or what he knows apart from the community, whose stated opinions form the defendant's reputation. See, generally, my dissent in State v. Ivy, 307 So.2d 587 (La.1975), on our docket, decided January 20, 1975. In that sense, the form of the question was wholly improper and unacceptable.
Additionally, I believe that under the present circumstances the Daniels and Simpson cases erroneously decided this issue in favor of the admissibility of evidence of prior arrests. The Daniels case cites only the Simpson case and pre-1952 cases for support of its holding in this regard; the Simpson case cites only pre-1952 cases, State v. Powell, 213 La. 811, 35 So. 2d 741 (1948) and State v. Thornhill, 188 La. 762, 178 So. 343 (1938). Before 1952, under the statutory provision which preceded our present La.R.S. 15:495, arrests and indictments could be used for impeachment purposes on cross-examination. See La. Code of Criminal Procedure of 1928, art. 495; see also Acts 1952, No. 180, § 1. In my dissent in State v. Ivy, supra, I noted the facts of the Powell and Thornhill cases and distinguished them from the situation we consider here. Again I note, in Powell the proper "have you heard" form of inquiry was made of the character witness the State sought to impeach on crossexamination. In Thornhill, the defendant, not a character witness, was the target of the State's cross-examination impeachment efforts. He was asked about prior arrests in accordance with the then existing statutory provision dealing with impeachment of witnesses, Article 495 of the Code of Criminal Procedure of 1928.
I believe it is instructive to note the Court's decision in State v. Carite, 244 La. 928, 155 So.2d 21 (1963), wherein the Court reversed the defendant's conviction because the State adverted to prior arrests during closing argument. In that case the Court noted that the State exceeded the permissible bounds of closing argument and also failed to accord the defendant the protection provided by former La.R.S. 15:495 of La. Code of Criminal Procedure of 1950. The Court stated:
"If the provisions of Article 495 of the Code of Criminal Procedure are to have any effect at all they must be applied in this case. That codal article sought to clothe the accused with a mantle of protection against any evidence of prior arrests for the reason that the inference and innuendo flowing therefrom are prejudicial. * * *"
The Carite case indicates to me that the Court has in the past extended the protection *603 afforded under what is now La.R.S. 15:495 because the legislature clearly evidenced in that statute its intention to keep a criminal prosecution free of damaging "inference[s] and innuendo[es]" which flow from allowing evidence of prior arrests. The Carite reversal was ordered in spite of the fact that the statute governing impeachment of witnesses was not directly applicable, the error having been committed during the State's closing argument.

BILL OF EXCEPTIONS NO. 3
While our jurisprudence admittedly allows evidence of other crimes to resolve the issue of the identity of the perpetrator of the crime for which a defendant is being prosecuted, I have misgivings about continuing to allow this evidence as the majority does in deciding the merits of Bill of Exceptions No. 3. Introduction of evidence of other crimes for the purpose of establishing identity is not statutorily approved as is "other crimes" evidence introduced to show system, guilty knowledge or intent. La.R.S. 15:445 and La.R.S. 15:446. Even in the situations where our statutory law specifically permits introduction of "other crimes" evidence, the Court has seen fit to erect and maintain safeguards to assure the proper use of such evidence. See State v. Prieur, 277 So.2d 126 (La. 1973). The necessity of having these safeguards clearly indicates the high degree of prejudice anticipated as a consequence of the introduction of such evidence. I therefore doubt the wisdom of allowing evidence of other crimes to establish identity when such use is not statutorily approved.

BILLS OF EXCEPTIONS NOS. 6 and 7
In deciding the merits of Bills of Exceptions Nos. 6 and 7, the majority approves the lack of Prieur notice because the evidence of the two other crimes was offered to squarely rebut testimony of the defendant given when he took the stand. I am of the opinion, however, that approval of this tactic will encourage the State to abbreviate or eliminate the Prieur notice and reserve for rebuttal witnesses' testimony which would more properly be presented during the State's case-in-chief. The State in this case knew in advance of trial all of the other acts or other crimes which might be used against the defendant. It would have been no great burden for the State to have given notice that these offenses or acts were to be used. Even though notice is given the State is not required to present evidence of other acts and offenses if at trial there develops some doubt about an adequate basis for presenting the evidence. If, for some unusual reason, the State did not know in advance of trial of some other criminal act, we might be faced with a different question. However, that situation is not likely to arise.
I am of the opinion that permitting this kind of practice effectively allows the State to diminish the defendant's attempts to defend himself; such a rebuttal presentation which puts before the jury evidence of other acts and offenses moments before the case is given to the jury is far more dangerous than the admission of "other crimes" evidence in a case like Prieur, where the evidence was presented during the State's case-in-chief. We would have to find an abuse of discretion if a trial court failed to permit surrebuttal in such an instance; but even if surrebuttal were permitted, the failure to give advance notice to the defendant renders futile the attempt to surrebut. Without advance notice the defendant would lack adequate time to secure witnesses and gather evidence to use during surrebuttal.
It is this Court's duty to enforce constitutional and statutory procedural protections without regard to the good or ill intentions of the prosecutor who uses improper trial procedures and tactics. However, I believe that it is the ill-intentioned prosecutor who would take advantage of a defendant's bad character by placing it at issue during rebuttal rather than during the case-in-chief; by so doing, the Prieur notice requirement is circumvented and the advantage of having the last word before *604 the jury is achieved. By such tactics the prosecutor assures the latest possible introduction of damaging evidence, thereby making a final impression on the jury which is favorable to the State.
I believe that the error committed by the State in adducing the "other crimes" evidence in this case is far worse than the error of introducing evidence of "arrests" prohibited by La.R.S. 15:495. See the discussion of Bill of Exceptions No. 5, supra. In this instance, an act which has not been determined an offense by judicial or quasi-judicial activityan act which is not shown to have resulted in any legal sanctionis used to the defendant's prejudice without any prior notice by the prosecution. I cannot sanction such a trial tactic.
For the above reasons, I cannot approve the majority's treatment and disposition of these bills of exceptions.

BILL OF EXCEPTIONS NO. 4
Finally, I am of the opinion that Bill of Exceptions No. 4 is improperly treated by the majority. As to the merits of using the "impeaching testimony" of Jo Jo Williams, that testimony would be inadmissible because its contents reveal that it was sought for the purpose of attacking the credibility of a witness on a totally irrelevant collateral matter. Impeachment as to a collateral issue may only be effected by cross-examination and may not be accomplished by producing extrinsic evidence. 3 Wigmore, Evidence, § 878 (3rd ed. 1940); McCormick, Evidence, § 47 (Cleary ed. 1972). However, had this been direct and relevant testimony bearing on a principal issue in the case, rather than collateral matter, then the majority's statement that the testimony regarding particular acts was not admissible would be incorrect. La.R.S. 15:490 and La.R.S. 15:491 speak of two types of credibility, "general credibility" and "credibility in the case on trial." The former is limited to general reputation when attacked but the latter has no such limitation.
I am of the opinion that the attempt to impeach, had it been proper, should have come in surrebuttal. I believe that due process is denied a criminal defendant when he is denied the right to attack the credibility of rebuttal witnesses by extrinsic evidence if the attack is confined to an attack on the witness' "credibility in the case on trial."
For all the reasons stated above, I respectfully dissent.
NOTES
[1] "(2) In the written statement the State shall specify the exception to the general exclusionary rule upon which it relies for the admissibility of the evidence of other acts or offenses." (State v. Prieur, supra, 277 So.2d at page 130).