436 So.2d 543 (1983)
STATE of Louisiana
v.
George G. ESTER.
No. 82-KA-1309.
Supreme Court of Louisiana.
June 27, 1983.
Concurring Opinion September 1, 1983.
Rehearings Denied September 1, 1983.
*544 William J. Guste, Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Paul J. Carmouche, Dist. Atty., Sonia D. Peters, Catherine M. Estopinal, Dale Cox, Asst. Dist. Attys., for plaintiff-appellee.
William T. Giddens, Jeanette Garrett, Shreveport, for defendant-appellant.
WATSON, Justice.
Defendant, George G. Ester, was convicted by a jury of distribution of a Schedule II controlled dangerous substance, Phenmetrazine (Preludin), on July 11, 1981. (LSA-R.S. 40:967; 40:964). Defendant was sentenced to five and a half years at hard labor and has appealed his conviction and sentence, relying on six assignments of error.[1]

FACTS
William Hall, a former security officer at the L.S.U. Medical School and corrections officer at Angola, was doing undercover narcotics work for the Shreveport Police Department while awaiting training at the Shreveport Police Academy. During the course of his six week investigation, approximately twenty-two people were arrested, including defendant Ester.
On July 11, 1981, Hall was at the corner of Sprague and Mary Streets in the "Bottoms" area of Shreveport. He was approached and asked if he wanted to buy pills. Hall replied that he wanted two and paid $30; the street price for Preludin being $15 per tablet. The seller said he was called George. This transaction took place around 8:30 P.M. in the summertime when it was still light. Three surveillance officers, Burns, Gahagan and Bonnette, were listening to Hall's conversation but could not see him. After defendant left, Hall described his size, clothes and hair style to the listening officers. Immediately afterward, Officers Burns and Gahagan observed a man fitting the description standing on the corner in front of the Sprague Street Hotel. Officer Joe Gahagan testified that he recognized George: "I knew him as George Ester, but I couldn't recall his last name at that time." (Tr. 320) George was described as a regular on the corner.
Hall and the officers returned to the police station where a confidential informant who had been at the scene told them George's last name. Gahagan testified:
"The informant was telling me that the guy's name was George, and I couldn't understand the last name he was saying. I was thinking he was saying Ethridge or something like that. Then he told me *545 that the George was Susie Mae Kirkendorf's ex-old man or Susie Mae George she's also known, ex-old man. I knew who he was then. I knew him from that. I knew he was George Ester." (Tr. 163)
Because of prostitution investigations, Gahagan was familiar with Susie Mae and George. Hall then picked out Ester's photograph, the seventh in a large group. Hall was not prompted to select Ester's photograph and it was not identified for him. Less than thirty minutes elapsed between the purchase and the identification.
Defendant contended at trial that his cut-offs, white shirt and braids were common to many young men in the area that night and the officers may have confused him with someone else whose first or second name was George, one possibility being a Frank George from whom Hall also bought drugs. However, both Hall and Burns negated this possibility; they knew Frank George.

ASSIGNMENT OF ERROR NUMBER ONE
Defendant contends that the trial court erred in refusing to order the state to reveal the name of the confidential informant who aided the officers' identification.
Roviaro v. United States, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) discussed the problem involved in balancing the government's interest in encouraging anonymous information against the defendant's right to a fair trial. In Roviaro, because the informant had helped set up the criminal occurrence and played a prominent part in it, the trial court committed prejudicial error in allowing the government to withhold his identity. Here, the informant was not a participant in the crime and merely aided the police in identifying the defendant. State v. Dobson, 260 La. 471, 256 So.2d 594 (1971), cert. denied 409 U.S. 913, 93 S.Ct. 242, 34 L.Ed.2d 173 (1972); State v. Oliver, 430 So.2d 650 (La.1983).
From the officers' testimony, the informant merely prompted their memory and Ester undoubtedly would have been identified without his aid. The trial court did not err in ruling that Ester was not entitled to disclosure of the name of the confidential informant.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER TWO
Defendant was originally charged with two counts of distribution, one on July 11 and the other on July 17. The two charges were severed for trial. After defendant gave notice of an alibi defense, the state gave notice of its intention to introduce rebuttal evidence of the second offense to prove identity. The trial court ruled that this was permissible. After this ruling, defendant did not present his alibi defense and contends that the ruling deprived him of a fair trial.[2]
LSA-R.S. 15:446 provides as follows:
"When knowledge or intent forms an essential part of the inquiry, testimony may be offered of such acts, conduct or declarations of the accused as tend to establish such knowledge or intent and where the offense is one of a system, evidence is admissible to prove the continuity of the offense, and the commission of similar offenses for the purpose of showing guilty knowledge and intent, but not to prove the offense charged."
These two offenses involved the same parties, the same illegal substance and the same location. Both occurred within a week's time. Thus, it would logically appear that the crimes were the work of the same person. See State v. James, 396 So.2d 1281 (La.1981). However, since drug sales were endemic in the "Bottoms" area of Shreveport, the two offenses are not "signature crimes". James, 396 So.2d at 1287. *546 Nonetheless, when the pattern of two offenses is so identical, the system exception applies if identity of the defendant as the perpetrator is a crucial issue. State v. Banks, 307 So.2d 594 (La.1975). Identity of George Ester was conceded to be the only real issue. Compare State v. James, supra. Where identity is genuinely at issue, system evidence has relevance independent of defendant's criminal propensity and should be admitted if it meets the other tests of admissibility. State v. Hatcher, 372 So.2d 1024 (La.1979). Thus, with clear and convincing evidence that Ester committed the other crime and a similarity logically indicating that he committed both, evidence of that other crime would have been so relevant to the critical issue of his identity as the perpetrator of this crime that the probative value of the other crime would outweigh its prejudicial effect. State v. Humphrey, 412 So.2d 507 (La.1982); State v. Hatcher, supra; State v. Banks, supra. There is no Prieur[3] problem because defendant was given notice of the state's intention to introduce evidence of the other crime in rebuttal. As in Banks, evidence of the identical later act of misconduct would have been highly probative. The trial court did not err in its ruling.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBERS FOUR AND FIVE
Defendant contends that the trial court improperly charged the jury with respect to reasonable doubt and erred in refusing to give a requested jury charge concerning reasonable doubt.[4]
The jury was instructed, in pertinent part, as follows:
"To begin with, every person in this state accused of crime is presumed by law to be innocent until his guilt shall have been established beyond a reasonable doubt in trial. The burden is upon the State to prove every essential element of the crime charged including identity.
* * * * * *
"The identification of the defendant as the person committing the offense must be proved to your entire satisfaction and beyond all reasonable doubt before you would be justified in finding him guilty.
* * * * * *
"It is the duty of the jury in considering the evidence and in applying to that evidence the law as given by the court, give the defendant the benefit of every reasonable doubt arising out of the evidence or want of evidence in the case. If you are not convinced of the guilt of the defendant beyond a reasonable doubt, it is your duty to find him not guilty." (Tr. 405-406)
* * * * * *
"Proof beyond a reasonable doubt is a phrase that is almost self-explanatory. *547 Reasonable doubt does not mean all possible doubt but means doubt based upon a reason. If, after you have considered the State's evidence and the law applicable, there is doubt in your mind as to the guilt of the accused, which doubt is based upon a reason or for which doubt you can express a reason, then the defendant is not guilty. Reasonable doubt is rational; it is governed by reason. It is not immoderate or excessive. It is honest, equitable and fair. Proof beyond a reasonable doubt does not mean proof to an absolute certainty." (Tr. 406-407)
In State v. McDaniel, 410 So.2d 754 (La. 1982) the phrases "great uncertainty" and "morally uncertain" were held to have overstated the degree of uncertainty required for a reasonable doubt. Defendant argues that the statement that reasonable doubt "is not immoderate or excessive" also gave this jury a misleading standard for proof of guilt.
One of the dictionary definitions of reasonable is "not excessive". Another is "moderate", i.e., not immoderate. While it would have been preferable for the trial court to have read only the exact language of LSA-C.Cr.P. art. 804 to the jury, the phrase "not immoderate or excessive" is not misleading. See State v. Taylor, 410 So.2d 224 (La.1982).
The trial court included the language of LSA-C.Cr.P. art. 804 in its charge. Since the gist of defendant's requested charge was included in the court's charge, refusal to make the requested special charge was not error. State v. Edwards, 419 So.2d 881 (La.1982).
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER SEVEN
Defendant contends that no rational trier of fact could have found beyond a reasonable doubt that defendant committed the offense. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). It is argued that Hall's identification of Ester was unworthy of belief and the circumstances of the identification are suspect and questionable.
Although Ester's primary defense was that another man, whose first or second name was also George, might have committed the crime, the evidence of his identity as the drug seller is convincing. His guilt was established beyond any reasonable doubt.
This assignment lacks merit.

ASSIGNMENT OF ERROR NUMBER EIGHT
Defendant contends that his five and a half year sentence at hard labor is excessive and the trial court erred in providing that it should run consecutively with any sentence to be imposed in connection with revocation of a prior probation.
Defendant, age twenty-nine, has four children and a good work history. However, he has several misdemeanor convictions including two convictions for attempted felony theft in 1981. Defendant's sentences on those 1981 convictions were suspended and he was placed on supervised probation for two years.
Since defendant did not respond favorably to his prior probation, the term of imprisonment imposed here is not excessive. However, the trial court erred in making it consecutive with any sentence to be imposed after revocation of the prior probation. That determination must be made in a revocation hearing by the court originally imposing the sentence and probation.[5] LSA-C.Cr.P. arts. 900, 901.
Therefore, defendant's conviction will be affirmed, but the sentence vacated and the matter remanded to the trial court for resentencing. State v. Donnaway, 410 So.2d 231 (La.1982).
*548 Accordingly, the conviction is affirmed, but the sentence is vacated and the matter is remanded to the trial court for resentencing.
CONVICTION AFFIRMED; SENTENCE VACATED; REMANDED.
DENNIS, J., concurs.
CALOGERO, J., concurs and assigns reasons.
CALOGERO, Justice, concurring.
I concur in the result reached by the majority in the instant case.
In assignment of error number 2, defendant contends that he was denied a fair trial because he was prevented from putting on his alibi defense by the threat, from a pre-trial ruling, that "other crimes" evidence (evidence of the commission of a similar crime one week later) would then be admissible to rebut his alibi. The majority finds no merit to defendant's argument by concluding that the "other crimes" evidence would have been properly admissible to prove identity and thus that the trial judge's ruling was correct. While I disagree with the majority's conclusion that the "other crimes" evidence would have been admissible, I nevertheless concur in the result reached for other reasons.
The other crimes evidence sought to be admitted by the state in defendant's trial to prove identity was evidence that defendant had made a later drug sale to the same individual. The majority concludes that since the "two offenses involved the same parties, the same illegal substance and the same location ... it would logically appear that the crimes were the work of the same person." I fail to see how logic dictates such a conclusion, especially here where the purchases were made on a street corner, by an individual requesting the given substance and in an area where "drug sales were endemic." Furthermore, while the majority acknowledges that there must be clear and convincing evidence that the defendant committed the "other crime" before evidence of it can be admitted, it fails to explain what that clear and convincing evidence was, I submit, because there was none. The evidence intended to be used to prove the defendant committed the "other crime," was the testimony of the buyer, the same individual who was testifying against the defendant in the instant case. Thus while the majority admits that identity was at issue, that is, that the buyer's identification was not conclusive, it concludes at the same time that the evidence (consisting of the same buyer's identification) that defendant was the perpetrator of the "other crime" was clear and convincing.
Therefore, I disagree with the majority findings that the two crimes were sufficiently similar to come within the systems exception to the rule prohibiting the admission of "other crimes" evidence, and that there was clear and convincing evidence of the defendant's commission of the "other crime." Nevertheless I concur in the majority result, affirming the conviction, because the record does not disclose that the issue was properly raised at trial. Rather, the record indicates that defense counsel made a tactical decision not to put on an alibi defense, and that decision was not forced upon him by the ruling by the trial judge.
The only evidence of a pre-trial ruling on this matter, apparent from the record of this case, is the following remark by the trial judge:
The Court ruled that if the, if you brought up in defense specifically the issue of identity, then the State would be able under a proper set of facts, and certainly at this point the Court can't imagine all of the matters in which it could have come up; but the Court ruled that the State would be entitled under a proper case and fit State versus Banks, and the reasoning there, the State would be permitted to introduce other crimes evidence. The Court never said or implied, at least certainly I don't think I did, that if you put on any kind of a defense at all then the State would be entitled to other crimes evidence.
Thus, there was no ruling by the trial judge, as argued by defendant, that chilled *549 defendant's right to put on an alibi and effectively denied him a fair trial. Rather, based on the trial judge's ruling that perhaps under certain circumstances that state might be allowed to introduce evidence of defendant's "other crime," defense counsel made a choice not to risk the possibility of the introduction of such evidence. However, that was a tactical choice by defense counsel and not a course of action based on a ruling by the trial judge. For this reason, I concur in the majority judgment affirming defendant's conviction.
I likewise concur in the reversal of defendant's sentence. In the instant case, defendant's probation had not been revoked prior to his sentencing. Consequently, the judge, as trial judge for the instant offense, was without authority to order this sentence to be served with that possibly forthcoming after the hearing on the probation revocation. Since the judge hearing the probation revocation action will be the later judge to sentence the defendant, it is within that judge's discretion to determine whether defendant's sentences will run consecutively or concurrently.
For the foregoing reasons, I concur in the majority opinion insofar as it affirms defendant's conviction and vacates his sentence and remands the case for resentencing.
NOTES
[1] Assignments Number Three and Six have been abandoned.
[2] According to defense counsel, if it were not for the court's ruling, defendant would have taken the stand and denied participating in the drug transaction. Three witnesses would have testified that George Ester lived in the Cooper Road area and always took the 6:00 o'clock bus home and could not have been in the Sprague Street area around 8:30 P.M. because of lack of transportation. Susie Mae George would have testified that George Ester was not her boyfriend or "old man".
[3] State v. Prieur, 277 So.2d 126 (La. 1973).
[4] Defendant requested that the trial court charge the jury as follows:

"The defendant is presumed to be innocent until each element of the crime necessary to constitute his guilt is proven beyond a reasonable doubt. The defendant is not required to prove that he is innocent. Thus, the defendant begins the trial with a clean slate.
"The burden is upon the state to prove the defendant's guilt beyond a reasonable doubt. In considering the evidence, you must give the defendant the benefit of every reasonable doubt arising out of the evidence or out of the lack of evidence. If you are not convinced of the guilt of the defendant beyond a reasonable doubt, you must find him not guilty.
"A reasonable doubt is a fair doubt, based upon reason and common sense, and arising from the state of the evidence. Proof beyond a reasonable doubt is such as you would be willing to rely and act upon in the most important of your own affairs. A defendant is never to be convicted on mere suspicion or conjecture.
"A reasonable doubt may arise not only from the evidence produced, but also a lack of evidence, for the burden is always upon the prosecution to prove the defendant guilty beyond a reasonable doubt on every essential element of the crime charged. A defendant has the right to rely upon failure of the prosecution to establish such proof. A defendant may also rely upon evidence brought out on cross-examination of witnesses for the prosecution." (Tr. 48-47)
[5] The status of defendant's probation is not clear in the record; it is possible that the term had expired.