164 So.2d 589

**STATE of Louisiana**

**v.**

**Luther H. DAVIS.**

No. 46950.

May 4, 1964.

Rehearing Denied June 16, 1964.

Philip E. Pfeffer, Covington, F. Pierre Livaudais, Folsom, for defendant-appellant.

Jack P. F. Gremillion, Atty. Gen., M. E. Culligan, Asst. Atty. Gen., Woodrow W. Erwin, Dist. Atty., Julian J. Rodrigue, Asst. Dist. Atty., for appellee.

FOURNET, Chief Justice.

The defendant, Luther H. Davis, having been found guilty without capital punishment of the murder of James "Buddy" Bennett under an indictment returned by the St. Tammany Parish grand jury, and sentenced to life imprisonment in the state penitentiary at hard labor, is appealing therefrom, relying for the reversal of his conviction and sentence on twenty-nine Bills of Exceptions reserved during the course of the trial, which were duly perfected.

The record reveals the defendant and his wife were arrested late on the afternoon of December 23, 1962, and confined in the parish jail at Covington, where he remained without benefit of counsel until March 1, 1963, when he was brought into court for arraignment and trial under two indictments returned February 19, 1963, charging him with the murders of James "Buddy" Bennett and Van Bruen Henley, respectively, on the day of his arrest, his wife having been released from custody the day the indictments were returned by the grand jury. Being without counsel of his choice and an indigent accused, the court, during the arraignment, appointed F. Pierre Livaudais, a young attorney admitted to the bar only a few months previous and who apparently just happened to be in the courtroom, to represent him. The defendant was allowed to plead not guilty without having first consulted with Mr. Livaudais and without any advice being given him with respect to his right to withdraw his plea for the purpose of filing motions or changing it,[1] the case being reassigned for trial on March 6, 1963.

According to the minutes of the court, the case was continued on two or three occasions on the motion of the assistant district attorney, being finally called for trial on Monday, June 17, 1963. In the meantime, however, on June 14, 1963, defense counsel filed several motions in which he sought an examination of (1) the bullet or bullets with which the deceased had been killed, (2) the murder weapon, and (3) a knife found at the scene of the crime, as well as a (4) motion for a bill of particulars; and (5) one to compel the state to elect which of the two charges against the defendant would be tried first. On the day of the trial all of these motions, with the exception of the last, were overruled and formal bills reserved. In response to the last, the state elected to try the defendant under the

---

1. While the court did at the same time appoint an additional attorney for the defendant—Phillip E. Pfeffer—who had more than five years of experience at the bar, as required by Article 143 of the Code of Criminal Procedure in capital cases (R.S. 15:143), this attorney was not present in the courtroom at the time and he did not, in fact, have knowledge of such an appointment until some time later. In several motions he admitted his lack of experience in the practice of criminal law.

indictment accusing him of the murder of Bennett.

■ We think the learned trial judge erred in refusing to grant the defendant's motion for a bill of particulars, on the ground it was filed on the morning of the trial and after arraignment, and was, thus, too late.

In State v. Barnes, 242 La. 102, 134 So. 2d 890, we held that "whenever the short form indictment is used in a prosecution, the accused is entitled, upon timely request, to be furnished with a bill of particulars setting out such matters that are of the essence of the charge against him and not included in the indictment and any other facts that are necessary for him to properly and intelligently prepare his defense." In that case the state had contended the motion for the bill, filed after arraignment and five days prior to trial was too late, and, in holding the judge had acted arbitrarily in upholding this contention, we observed that the discretion given the trial judge in such matters under R.S. 15:235 "must be real and reasonable."

It may be well to point out that the judge was in error in stating in his per

curiam to his ruling denying the motion for the bill that it had not been filed until the day of the trial. However, it is immaterial whether filed on that day or on June 14, 1963—as the motion itself and the minutes of the court reflect—for we think the judge in the instant case, knowing the defendant was arraigned in the presence of a young and inexperienced attorney, just out of law school, and who had not consulted with his client prior to the plea or reserved the right to further plead in defendant's behalf, should have, himself, advised the defendant at that time of his rights,—at least with respect to his right to withdraw the plea of not guilty in order to be able to file any and all motions that might be found necessary after due consultation with his counsel.[2]

Counsel for the prosecution, in addition to erroneously stating the motion for the bill was not timely because filed on the day of the trial, asserts further in brief that counsel for the defendant obviously overlooked the fact that under the express provisions of Article 235 of the Code of Criminal Procedure (R.S. 15:235),[3] defense counsel could only request a bill of particu-

---

2. In order to prepare to adequately defend Davis, his counsel were certainly entitled to be informed if he had made a confession, whether oral or written, at the time of his arrest, and, if reduced to writing, to have it produced for their inspection. Further, inasmuch as the defendant claimed the killing was justified because in self-defense, they were entitled to the further information requested as to whether any dangerous weapon or instrument had been found on the person of the deceased or around or near his body.

3. This article provides the short form of indictment may be used in charging the crimes therein set forth, "[p]rovided further that the district attorney, if requested by the accused *prior to arraignment,* may be required by the judge to

lars before arraignment, and, having failed to withdraw his plea of not guilty before filing the motion for such a bill, the judge properly denied same, thus confirming the defendant was fully justified in his contention in his motion for a transcript of the entire trial, for habeas corpus, a new trial, and in arrest of judgment and his constitutional rights could not be—and in fact were not—adequately protected by his inexperienced counsel.

We need not point out in detail the many other instances and incidents occurring during the course of this trial that demonstrate defense counsel's lack of experience in the practice of criminal law, but they cause us to realize, though belatedly, the wisdom of the court's remarks in State v. Brodes, 156 La. 428, 100 So. 610, with Judge Ben C. Dawkins as the author, to the effect that "the better practice would be, in a capital case, that, where it is necessary to do so, the court should appoint counsel before arraignment, in order that all legal rights of accused may be asserted if desired and none waived." This is particularly true because of the modern trend in all recent decisions of the United States Supreme Court holding that in order to secure the due process and equal protection contemplated by the Sixth and Fourteenth amendments to the federal constitution, an accused must have the assistance of effective counsel at all stages of the proceedings in the prosecution against him. See, Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733.

■ Another serious and prejudicial error was committed when the trial judge allowed the state to recall to the stand two deputy sheriffs for the purported purpose of rebutting testimony given by the defendant in chief. (Bills of Exceptions Nos. 15 and 16 were reserved when the trial judge overruled defense objection to this testimony.)

It is obvious from the transcript of this trial that in order to convict the defendant the state was relying entirely on three purported "confessions" made by him following his arrest,[4] while he was relying on a plea of self-defense. This having been anticipated by the state, it had elicited from two deputy sheriffs during its evidence in chief statements to the effect that when Davis "confessed" he never at any time claimed he shot Bennett in defense of himself or his wife. The defendant, taking the stand in his own behalf, stated the killing resulted

---

furnish a bill of particulars setting up more specifically the nature of the offense charged." (The emphasis has been supplied.)

4.   The defendant was arrested around 4:00 p. m. by Lt. Cook of the State Police as he was on his way to Covington to surrender, and purportedly made his first oral "confession" as he stood by the roadside at that point. The next two were made in the office of the sheriff in Covington, although the sheriff was only present when the third one was made.

from an altercation that exploded into a fight in the home of Bennett around 2:00 p. m., on Sunday, December 23, 1962, when Bennett, who had been brandishing a knife, became enraged because Davis refused to take him back again to a bar for more liquor after the rather large amount procured since the drinking started early that morning had been depleted, Henley, during the struggle, hitting the defendant on the side of the head and knocking off his glasses, while Bennett made a pass at Mrs. Davis. Pushing his wife from the house and holding the door until she reached their car safely, Davis then ran to the car, with Bennett and Henley in pursuit, the former calling to the latter to hurry because they were going to "get him," all of which caused the defendant to fear bodily harm such as he had been subjected to some two months previous when, during a similar occurrence, he had been jumped on by both men and severely beaten, and to shoot Bennett, who still had the knife in his hand, when he was only about three feet away because he refused to stop when asked by the defendant to do so. It was then the trial judge permitted the state, over defense

objection, to recall these same two deputies to the stand and simply have them repeat and reiterate their testimony that defendant did not state at any time during his "confessions" he had killed Bennett in self-defense.

This was clearly not rebuttal testimony, but, at best, simply a repetition of the negative testimony these men had given in chief. It would seem to us that if the state desired to rebut defendant's version of what occurred at the Bennett home on December 23, 1962, it should have introduced the testimony of the only other eye witness, i. e., the wife of the decedent Bennett, and inasmuch as it did not do so, or explain her absence, it is fair to conclude her testimony would have been adverse to the state's cause.[5]

It is obvious to us that such attempted rebuttal was particularly prejudicial to the defendant as it could have had no other effect than to place the weight of these public officials in the scales of justice. It is well to note here that all of the witnesses to these so-called "confessions" were either deputy sheriffs or the assistant district attorney who tried the case,[6] the latter, in

5. Lt. Cook of the State Police, who heard the first of these so-called "confessions" by the roadside, was not called to the stand, and the sheriff, who was present when the third was purportedly made, had suffered a heart attack.

6. Had the trial judge granted the motion for the bill of particulars sought by defense counsel in order that they might be able to adequately prepare for Davis's

defense, it may well be they would have been informed the defendant made at last three "confessions," the second of which, at the specific instruction of the assistant district attorney, had been reduced to writing from notes taken by one of the deputies called in rebuttal, and this may also have thrown some light on the subject.

his argument to the jury, emphasizing time and again that because of his personal participation in the taking of these "statements" he knew the deputies were telling the truth. And although he did not take the stand in this so-called rebuttal effort, he nevertheless, argued consistently to the jury that Davis had never told him *as the assistant district attorney* he acted in self-defense.

Finally, to compound the injury, and further prejudice the jury, the district attorney, who did not try the case but was in the courtroom throughout the trial as a spectator, added his personal prestige, as well as the weight of his office, in the scales against the defendant, by making the following special plea to the jury in closing:

"Now, in this case, the only thing you've got to look for, the only thing in my opinion which is important, is whether or not you are going to believe the duly constituted law officials of this Parish, *including my own assistant*, or whether or not you're going to believe this man, who through his own admission and who through cross examination, is a convicted criminal. *That's what you've got to decide in this case and that's the only question you've got to decide.*" (The emphasis has been supplied.)

For the reasons assigned, the conviction and sentence are reversed, the defendant

is granted a new trial, and the case is remanded for further proceedings in accordance with law.

HAMITER, HAMLIN and SANDERS, JJ., concur in the result.

McCALEB, J., concurs in the decree.

SUMMERS, J., concurs.

## ON APPLICATION FOR A REHEARING

PER CURIAM.

In the opinion herein, we noted several errors, which taken together, required that the conviction be set aside. In its application for rehearing, the state has strongly urged that the decision is erroneous.

The principal basis for the decision was the denial by the trial court of the Motion for a Bill of Particulars on the ground that the motion was filed too late. We base our denial of a rehearing on this erroneous ruling of the trial court.

The application for a rehearing is denied.

HAMITER, J., concurs in the result.

HAWTHORNE, J., dissents from the refusal to grant a rehearing.