327 So.2d 401 (1976)
STATE of Louisiana
v.
George WYATT.
No. 56837.
Supreme Court of Louisiana.
February 23, 1976.
*402 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., Louise Korns, Norman J. Robinson, Jr., Asst. Dist. Attys., for plaintiff-relator.
Edward A. Armstrong, Jr., New Orleans, for defendant-respondent.
SANDERS, Chief Justice.
The Orleans Parish District Attorney filed a bill of information charging George Wyatt with the armed robbery of Mary Carroll of $1,565.00 in violation of LSAR.S. 14:64. Defendant filed a motion to suppress the pistol, purple shirt, and bag of money seized by the police at the defendant's home. After a hearing, the trial court granted the motion and suppressed the evidence. On application of the State, we granted supervisory writs to review the ruling.
The facts developed at the hearing include the following: On March 27, 1975, at approximately two o'clock in the afternoon, Officer Andrew Fossier of the New Orleans Police Department, while driving his automobile, was flagged down by Mr. Casey, an officer of the Continental Savings and Loan Company located a few blocks away. Casey explained that his business had just been robbed and pointed down the street to an elderly man wearing a purple shirt, identifying him as the armed robber. Looking into the rear view mirror of his car, the officer saw the defendant hurriedly enter a house. Officer Fossier and Casey then followed the defendant to the house. Meanwhile, another police officer, Deputy Sheriff John Attoway, who had observed the events from his own police vehicle, joined Officer Fossier and Mr. Casey in their pursuit. When they reached the house, they asked Carl Johnson, an occupant seated on the steps, if a man had just gone into the house. He replied affirmatively and granted them permission to enter.
Defendant-Wyatt was found lying shirtless on the bed and was placed under arrest by Officer Fossier. Deputy Sheriff Attoway proceeded to look for weapons and found a brown paper bag filled with money inside the refrigerator. Other officers arrived and found a small pistol on the mantlepiece and a purple shirt in a pile of clothes.
The defendant's motion to suppress the money, gun, and shirt found at defendant's home was granted by the trial court because the court concluded that the evidence was obtained in a warrantless search contrary to the United States and Louisiana constitutions. The State contends that no warrant was needed because either (1) the evidence was seized following an entry into the house while the officers were in hot pursuit of an armed robber, or (2) the officers were given permission to enter the house and search for the defendant by Mr. Johnson, who lived with the defendant at that address.
Under the Fourth Amendment to the United States Constitution, warrantless seizures are per se unreasonable, unless justified by one of the exceptions to the requirements for a search warrant. Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); State v. Hills, La., 283 So.2d 220 (1973). In the present case, the police officers did not have a search warrant authorizing them to search the defendant's home. The State, however, argues that because the officers were in hot pursuit, no warrant was necessary.
*403 In Warden, Maryland Penitentiary v. Hayden, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), the United States Supreme Court held that when the "exigencies of the situation" make that course imperative, neither the entry of a residence without a warrant to search for the robber, nor the search for the robber and his weapons are invalid, citing McDonald v. United States, 335 U.S. 451, 69 S.Ct. 191, 93 L.Ed. 153 (1948). The court upheld the entry of a residence and the seizure of evidence while in hot pursuit of the fleeing felon.
In Hayden, an armed robber entered a taxicab office, took a sum of money and fled. Two taxi drivers, hearing the shouts "hold up," followed the robber to a residence. One of the cab drivers notified the taxicab dispatcher and described the robber. The dispatcher immediately notified the police, who arrived at the scene in less than five minutes. The police had no warrant. A police officer knocked on the door and was given permission to search the house for the robber by the defendant's wife. Other officers spread out through the building searching the cellar, first, and second floors. The defendant was found in an upstairs bedroom, feigning sleep. He was placed under arrest after the police officer in the cellar announced that there was no other man in the house. Meanwhile, one of the officers was attracted by the sound of running water in an adjoining bathroom, investigated, and discovered a shotgun and pistol in the toilet flush tank. Another officer found in a washing machine a jacket and trousers of the type the fleeing man was said to have worn. A clip of ammunition for the pistol and a cap were found under the mattress of defendant's bed; ammunition for the shotgun was found in a bureau drawer in his room.
The State correctly maintains that Warden v. Hayden, supra, is indistinguishable from the instant case. In the instant case, an armed robber entered a savings and loan company, took $1,565.00, and fled. The company official who witnessed the robbery followed the robber. The official hailed a police officer, explained that his place of business had just been robbed by a man with a gun, described the man, and pointed out an elderly man in a purple shirt carrying a bag as the man who had robbed his business. They saw him hurriedly enter a building. Another police officer in a car immediately behind the officer who had been flagged down, witnessing the events and thinking that the officer might need his help, joined in the pursuit which followed the loan company officer's "hue and cry." The police officers had no warrant. They saw the defendant hurriedly enter a house. They were given permission to search the house for the robber by a man seated on the front steps who lived there with the defendant. The officers spread out and the defendant was found shirtless on a bed. The defendant was placed under arrest. No one else was found inside the building. Within four or five minutes of entering the premises Officer Attoway found a bag of money in a refrigerator. Within fifteen minutes, other police officers secured the pistol from the mantlepiece and the purple shirt from a pile of clothing. Both items were in plain view.
In oral argument, the defense asserted that the defendant had been removed from the premises prior to the seizure of the gun and the shirt. We do not find that the record supports this assertion. As we have noted the entire episode occurred within fifteen minutes after the entry. The officers removed the defendant from the premises after seizing the gun and shirt.
In Warden v. Hayden, the United States Supreme Court held:
"We agree with the Court of Appeals that neither the entry without warrant to search for the robber, nor the search for him without warrant was invalid. Under the circumstances of this case, `the exigencies of the situation made that *404 course imperative.' McDonald v. United States, 335 U.S. 451, 456, 69 S.Ct. 191, 93 L.Ed. 153. The police were informed that an armed robbery had taken place, and that the suspect had entered 2111 Cocoa Lane less than five minutes before they reached it. They acted reasonably when they entered the house and began to search for a man of the description they had been given and for weapons which he had used in the robbery or might use against them. The Fourth Amendment does not require police officers to delay in the course of an investigation if to do so would gravely endanger their lives or the lives of others. Speed here was essential, and only a thorough search of the house for persons and weapons could have insured that Hayden was the only man present and that the police had control of all weapons which could be used against them or to effect an escape."
In our opinion, the items here were constitutionally seized in the exigencies of hot pursuit.
The State, moreover, has advanced an independent ground for admission of the evidence, which we find equally valid. The State asserts that the police officers had permission to enter the house and search for the robber.
The record reflects that Carl Johnson gave the police officers permission to enter the house. It is undisputed that he lived there with the defendant.
It is well established that a joint tenant or one having common authority over the premises can legally consent to an entry and search. See United States v. Matlock, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); State v. Hubbs, 261 La. 173, 259 So.2d 53 (1972); State v. Edwards, 257 La. 707, 243 So.2d 806 (1971); State v. Comeaux, 252 La. 481, 211 So.2d 620 (1968); State v. Gregoire, 249 La. 890, 192 So.2d 114 (1966); Annot., 31 A.L.R.2d 1078 (1953); W. Ringel, Searches and Seizures, § 232, p. 290 (1972).
In State v. Edwards, supra, the defendant who had committed a burglary was followed by the police to his mother's house. The mother gave the officers permission to enter and search for him. In the course of the search, the officers seized suitcases and other evidence which were connected with the burglary and in plain view. This Court upheld the seizure of the evidence and admitted it at the trial.
Defendant contends that the permission here was limited to searching for the defendant and that the officers exceeded the scope of their permission when they seized the pistol, money, and shirt.
We do not construe the permission so narrowly. The officer testified that he asked for permission to enter the house to search for a suspect believed to have committed an armed robbery, which was granted. Such a consent, in our opinion, includes a grant of permission to seize the robber, his weapon, clothing, and the fruits of his crime.
We conclude that the consent was constitutionally valid.
Contrary to the ruling of the trial court, we hold that the evidence seized is admissible at the trial.
For the reasons assigned, the ruling of the Criminal District Court of the Parish of Orleans is reversed; the motion to suppress is overruled; and the case is remanded to the District Court for further proceedings according to law and consistent with the views herein expressed.
DIXON, J., concurs.
DENNIS, J., concurs for the reasons that the police officers had permission to enter and search the house.
*405 TATE, Justice (dissenting):
The search of the refrigerator without a warrant and without consent violated the constitution. Hot pursuit does not justify an extended search of the premises. The trial court properly suppressed the evidence.
CALOGERO, J., dissents and assigns reasons.
CALOGERO, Justice (dissenting).
The trial judge in this case suppressed the seized evidence because, after hearing all of the witnesses and assessing the facts, he concluded that the arresting officers had ample time, after effecting the arrest, to obtain a search warrant. Moreover, he obviously concluded, as does this dissenting Justice, that no exception to the warrant requirement was shown to exist under the uncontroverted facts before him.
For the foregoing reasons I respectfully dissent.