332 So.2d 800 (1976)
STATE of Louisiana
v.
Dale A. SNODDY.
No. 57386.
Supreme Court of Louisiana.
May 17, 1976.
Rehearing Denied June 18, 1976.
*801 Dale A. Snoddy, in pro per., George M. Leppert, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., James E. Boren, Asst. Dist. Atty., for plaintiff-appellee.
TATE, Justice.
The defendant was convicted of simple burglary, La.R.S. 14:62, and sentenced to five years at hard labor, suspended. The defendant appeals in proper person. (An attorney was also appointed to assist him.)
Context Facts
The burglary (unauthorized entry with intent to commit a theft) is proved. Entrance into a country club was forced, and a screwdriver was stolen.
The defense is that the accused was not the burglar but that he, along with his brother, was following the burglars, who had themselves burglarized young Snoddy's automobile some minutes earlier.
Snoddy, a very young man, and his younger brother testified that they observed some unknown men taking tools from the backseat of their automobile parked outside an apartment complex. Snoddy and his brother followed the burglars on foot to a point about one-half mile distant, hoping to glimpse the license plate of the burglars' car.
Snoddy and his brother testified that they waited outside the country club into which the two burglars had apparently entered. They approached and, outside on an air conditioner, found wrapped in a towel their stolen tools (a tin clip, and a pruning shear), together with a screwdriver (which was taken either from their car or from the country club). At this moment, a burglar alarm commenced ringing, and Snoddy and his brother ran towards a field, to avoid the burglars (they said).
The state's case identifying Snoddy as the offender is represented by the testimony of two officers. They were on routine patrol. Their lights picked up two figures running. The officers pursued the two figures and arrested young Snoddy and his brother, finding in the vicinity the towel, the pruning shears, the tin snips, and (the following morning) the screwdriver.
The defendant's explanation for the discovery of himself and his tools at the scene is unusual, if not improbable. On the other hand, the young men from the moment of their arrest have persisted in this explanation, without inconsistency and with apparent straightforwardness. That their version is not incredible is seemingly uncorroborated by the close (9-3) vote by which the jury convicted.
*802 Contentions on Appeal

(1)
At his trial, the defendant Snoddy was represented by the public defender. A most serious contention of his appeal is that he was refused permission to represent himself, despite his repeated requests to do so. If so, he was denied his constitutional right to conduct his own defense and is, thus, entitled to a new trial. Faretta v. California, 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
Because of our concern as to this issue, we ordered the record supplemented by the transcript of the hearings on preliminary motions and fixings.
We do find that, as Snoddy insists, from the beginning his position was that he was innocent and that he did not need the assistance of an attorney. His repeated reiteration of this stand was, as he now states, somewhat irksome to the court and the prosecutorial staff.
However, see pp. 6-7 of the supplemental transcript, the trial court finally informed him, "If you don't want an attorney you are entitled to represent yourself"; adding, "but I can only question you in that regard after you have at least discussed it with an attorney."
To this the accused responded: "There is a possibility I need to discuss it with an attorney." The record then shows that the defendant, after consultation with a public defender, appeared with the latter. The public defender stated, apparently with the accused's consent, "Your Honor, we represent Mr. Snoddy. We will waive formal arraignment and he will enter his own plea of not guilty." Immediately thereafter upon being asked "How do you plead?", the accused personally replied, "Not guilty".
Under these circumstances, we find that the defendant knowingly waived his right to conduct his own defense and accepted representation by the public defender. This being so, he cannot subsequently urge that a conviction be set aside because of a denial of his right to be his own attorney. State v. Nix, 327 So.2d 301, 353-54 (1975).

(2)
The other assignments of error made by the accused principally relate to an attack on the factual accuracy of the arresting police officers.
He points out the improbability of their testimony as to how they spotted a man running from the building, and he relies with some confidence upon the apparent inaccuracy of their testimony that no loud audible burglar alarm was sounding at the time of the crime; as is seemingly contradicted by the testimony of the country club officer and employee. (The testimony of the officers that no alarm was sounding was, of course, damaging to the accused, since his own defense of the actions in running from the scene of the burglary depended in part upon the sounding of the alarmby his testimony, allegedly caused by the action of the true burglars).
Nevertheless, the evaluation of the credibility of the witnesses is not reviewable by us on appeal. The determination of the trial jury is final, for appellate purposes, where (as here) there is some evidence from which the jury could find the defendant guilty, however close its vote.
The accused's other contentions are likewise without merit: (a) In the absence of objection, or of any showing of purposeful discrimination to reach such result, his complaint that he was tried by an all-male jury presents no reviewable issue; (b) Likewise, his complaint that he was not afforded a preliminary examination nor a pre-trial conference or discovery, does not, in absence of prior requests, present a reversible issue, especially where no prejudice is claimed or shown; (c) Pretermitting whether the issue is properly raised procedurally, the record demonstrates probable *803 cause for the officers to pursue and arrest the defendant and his brother and to obtain a book of matches (see below) from the latter.

(3)
At the trial, the public defender reserved a bill of exceptions to the trial court's rule permitting the state to put part of its case-in-chief on as allegedly rebuttal evidence. The attorney appointed by us (to assist the defendant conduct his own appeal) argues most persuasively that the trial court's ruling is erroneous.
The rebuttal evidence is, as the attorney alleges, in reality part of the state's case-in-chief. It is most damaging, for it is the only direct evidence tending to indicate that the young men had actually gone inside the burglarized building. This evidence relates to a booklet of matches marked with the country club's initials, which was found in the pocket of the defendant's younger brother at the time of their arrest.
The state may not reserve part of its case-in-chief for rebuttal testimony, after the defense has put on its case and when it can no longer present evidence to rebut the state's case. This is contrary to statute, to ancient jurisprudence, and to rules of fair play. La.R.S. 15:282; State v. Campbell, 263 La. 1058, 270 So.2d 506 (1972); State v. Davis, 246 La. 383, 164 So.2d 589 (1964); 2 Marr's Criminal Jurisprudence of Louisiana, Section 633 (1923).
In the present case, the state did not refer to the matches in its case-in-chief. It referred to them for the first time on cross-examination of young Snoddy's brother, when the latter testified in support of the accused's defense.
The brother was then asked about the booklet of matches. He identified the booklet as that taken from his pocket, and it was then introduced into evidence by the state. Upon being questioned where he had gotten the matches, he said that he found them by the tools and picked them up at the same time.
Cross-examination immediately ended, and the defense rested.
Over objection, the state then called the police officer to testify on rebuttal as to the matches. The police officer corroborated the Snoddy brother's testimony, including that he had told the officer he found the matches on the ground. The police officer then testified that the matches were dry, whereas (due to a heavy dew) the tools found on the ground were wet.
Technically, the police officer's testimony about the circumstances of the dryness of the matches may have tended to rebut the younger Snoddy's testimony that he had found the matches near the tools, which themselves were wet. (In fairness, the Snoddy testimony could well mean that both matches and tools were dry when picked up from an air conditioner attached to the building, while only the tools became wet when dropped on the ground during the chase.)
A close issue is presented by the state's failure to introduce the evidence of the matches in its case-in-chief, and its introduction of allegedly rebuttal testimony as to circumstances of their finding essentially not denied by the testimony on behalf of the defendant.[1]
Nevertheless, allowing for the large discretion of the trial court in such matters, we cannot say there is reversible error; especially since the rebuttal testimony is not essentially denied by the defense, nor *804 did it inject any new issue into the trial against which the defendant had not fair opportunity to present countering evidence.

Decree
For the reasons assigned, therefore, we affirm the conviction and sentence.
AFFIRMED.
NOTES
[1] And indeed, if the purpose of withholding the issue until cross-examination was the hope that the apparently truthful boys would damage their credibility by denying the finding of the matches (thus permitting their proper introduction on rebuttal), the failure of such a tactic should not nevertheless allow introduction as "rebuttal" evidence of testimony properly part of the state's case-in-chief.