338 So.2d 621 (1976)
STATE of Louisiana
v.
Judith Kay ROACH.
No. 57650.
Supreme Court of Louisiana.
October 6, 1976.
Rehearing Denied November 5, 1976.
*622 John M. Blanchard, Orleans Indigent Defender Program, New Orleans, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., William L. Brockman, Asst. Dist. Atty., for Roach.
DENNIS, Justice.
Defendant, Judith Kay Roach, was convicted of possession of heroin with intent to distribute, La.R.S. 40:966, and sentenced to serve ten years at hard labor. She filed nine assignments of error, but relies upon only seven of these for reversal of her conviction and sentence.
This case is a sequel to State v. Saia, 302 So.2d 869 (La.1974), and arises from the same factual situation.
Police Officers Arnold Jackson and Paul Eskine, on August 18, 1972, were patrolling in the vicinity of 619 General Taylor Street in New Orleans. The officers suspected that Warren Johnson and Judith Roach were engaged in the unlawful sale of heroin at that address. The officers possessed uncorroborated information to this effect from informants whose prior reports had led to arrests, but as yet no convictions, and unspecified data from fellow police officers. Thus, their information at this time was insufficient to establish probable cause to arrest or to search. As they were driving by the residence they saw Charlene Saia leaving. After observing what they considered to be suspicious acts by Ms. Saia, the officers approached her and discovered two packets of white powder which they believed to be heroin. They placed her under arrest.
As they were putting Ms. Saia in their patrol car one of the officers saw and recognized Warren Johnson as he emerged from the residence at 619 General Taylor Street. When Johnson saw the officers he immediately returned to the residence and re-entered. Officer Jackson unsuccessfully attempted to reach Johnson before he got inside. Jackson was joined by Eskine and together they kicked in the door. Once inside, they saw and recognized the defendant, Judith Roach, in the hallway leading from the front room; she was wearing only an open robe, panties and a bra. Upon their unannounced and forcible entry, Ms. Roach ran down the hallway to a bedroom. The officers pursued her past the kitchen door. Johnson ran out of the kitchen and out the front door. Officer Jackson gave chase, but was unable to catch him. Jackson returned to the bedroom where Eskine waited with Ms. Roach, having placed her under arrest for possession of the heroin seized from Ms. Saia.
After the arrest had been effected, Officer Jackson noticed a piece of green tissue protruding from the left cup of Ms. Roach's bra, and ordered her to remove it. She removed two packages, one from each bra *623 cup, containing some sixty-two glassine envelopes of heroin.
ASSIGNMENTS OF ERROR NOS. 1 and 7
Prior to trial Ms. Roach moved to suppress the heroin taken from her by the officers as having been unconstitutionally seized. Her motion was denied by the trial judge, and the evidence was admitted at trial. Defendant complains that her rights under the United States Constitution and under Article I, § 5 of the Louisiana Constitution of 1974 were violated. We observe at the outset that defendant's arrest, accusation and trial occurred prior to the adoption of the 1974 Louisiana Constitution. Therefore her reliance thereon is misplaced.[*]
Officers Jackson and Eskine both testified at the hearing on the motion to suppress, and again at trial, that defendant was arrested for possession of heroin before they discovered the evidence on defendant's person which she attempted to suppress. Both officers testified they did not know defendant was in the residence when they initiated their entry; they had no warrant for her arrest; and they had no warrant to search the residence at 619 General Taylor Street.
Though the officers suspected, on the basis of uncorroborated information, that the residence was being used as a base for heroin sales by Johnson and Roach, their own testimony clearly establishes that they relied on the arrest of Charlene Saia to corroborate those suspicions, to kick down the door, and to arrest Judith Roach.
In State v. Saia, 302 So.2d 869 (La. 1974), we declared Charlene Saia's arrest unlawful and ordered the suppression of evidence seized incident thereto. Accordingly, defendant argues that the officers, relying as they did on the fact of Saia's arrest to supply probable cause for their forced entry into the residence at 619 General Taylor Street and for their arrest of Judith Roach, exploited the prior illegal arrest, and the evidence seized from Roach's person incidental to her arrest must be suppressed.
Had defendant's arrest occurred after the effective date of the 1974 Louisiana Constitution her argument would be correct. Under the new state charter Judith Roach would have had standing to assert the illegality of the arrest, search and seizure of Saia because she was adversely affected by it. La.Const. Art. I, § 5 (1974) provides:
"Every person shall be secure in his person, property, communications, houses, papers, and effects against unreasonable searches, seizures, or invasions of privacy. No warrant shall issue without probable cause supported by oath or affirmation, and particularly describing the place to be searched, the persons or things to be seized, and the lawful purpose or reason for the search. Any person adversely affected by a search or seizure conducted in violation of this Section shall have standing to raise its illegality in the appropriate court." (Emphasis supplied.)
This provision purposefully differs from the prevailing federal rule, which limits the ability to assert the unconstitutionality of a search and seizure to the individual whose person or property was unlawfully searched, e. g., Brown v. United States, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), and enlarges the class of persons entitled to object to an unlawful search and seizure in this state. The following comments from the committee responsible for drafting Article I, § 5 were included in the Convention Journal when the section was introduced to the convention:
"* * * persons protected against illegal searches and seizures include not only the person whose house or property has been illegally searched but also any other person adversely affected by the *624 illegal search." Official Journal, Constitutional Convention of 1973, Vol. I, p. 86.
An examination of the convention debates reveals that the delegates were aware that Article I, § 5 as proposed enlarged the class of persons entitled to object to unconstitutional police conduct. XIII Constitutional Convention of 1973, Verbatim Transcripts, 14-28. A proposal which would have deleted the last sentence of Article I, § 5 was defeated by a 37 to 72 margin; the provision at it now appears passed by a vote of 96 to 11. Id. at 28. See also, Hargrave, The Declaration of Rights of the Louisiana Constitution of 1974, 35 La.L.Rev. 1, 20-25 (1974).
The question presented by the instant case, however, is whether, under the law existing before the effective date of the Louisiana Constitution of 1974, Judith Roach had standing to assert the unlawful arrest of Charlene Saia, in order to have her own arrest and search suppressed as an unlawful product thereof under the holding of Wong Sun v. United States, supra. The federal courts have consistently held that in order to have standing "* * * one must have been a victim of a search and seizure, one against whom the search was directed, as distinguished from one who claims prejudice only through the use of evidence gathered as a consequence of a search or seizure directed at someone else. * * *" Jones v. United States, 362 U.S. 257, 261, 80 S.Ct. 725, 731, 4 L.Ed.2d 697, 702 (1960). See also, Brown v. United States, supra; United States v. Hunt, 505 F.2d 931 (5th Cir. 1974); 29 Am.Jur.2d, Evidence § 418. Louisiana jurisprudence, under the Louisiana Constitution of 1921 imposed a requirement of standing substantially identical to the federal rule. State v. Vassel, 285 So.2d 221 (La.1973); State v. Rouse, 256 La. 275, 236 So.2d 211 (1970); State v. Page, 251 La. 810, 206 So.2d 503 (1968). Therefore, we conclude that defendant Roach had no standing to complain of the unlawful arrest of Charlene Saia or the illegal seizure of heroin from Saia's person.
It necessarily follows then, because of the sequence of events, Ms. Roach cannot complain that the arrest and search of her own person were illegal under the principles of law existing at the time. Prior to the arrest of Saia the police officers had information that Roach and Warren Johnson were trafficking in heroin at 619 General Taylor Street. Shortly after Saia exited from this address the officers seized heroin from her. This constituted an illegal search of Saia, as we so held, but it did not amount to illegal activity insofar as Roach was concerned. Instead, combined with the information they already possessed, it gave the officers probable cause to arrest Warren Johnson when he emerged from the same address shortly thereafter. When Johnson hastily retreated into the building the officers, now armed with probable cause, were entitled under the doctrine of hot pursuit to enter in an effort to apprehend him. State v. Wyatt, 327 So.2d 401 (La.1976). Then, upon encountering Ms. Roach inside, they gained, by virtue of the previous events and information within their ken, probable cause to arrest her and conduct a search incidental to the arrest. State v. Tarver, 324 So.2d 382 (La.1976).
Because defendant was arrested before the effective date of Louisiana's 1974 Constitution, because the rule previously applicable in Louisiana and still applicable in the federal courts requires that a defendant have standing to assert alleged unconstitutional searches and seizures, and because defendant has not shown the requisite standing, we find no basis for reversing the trial judge's rulings denying defendant's motion to suppress and admitting at trial the heroin taken from her person after her arrest.
For the foregoing reasons defendant's first and seventh assignments of error lack merit.
ASSIGNMENTS OF ERROR NOS. 2 and 3
Defendant contends that the trial judge committed reversible error in sustaining the State's objections to the following questions, directed to prospective jurors on voir dire examination:

*625 "Have any of you gentlemen who've said that you served on a jury before, was it a narcotics case?
"* * *
"Are any of you people property owners? Real estate property. Who amongst you are not registered voters?"
Defendant, relying on State v. Hills, 241 La. 345, 129 So.2d 12 (1961), argues that these questions were designed to aid him in intelligent use of his peremptory challenges. Hills was most recently discussed by this Court in State v. Monroe, 329 So.2d 193, 195 (La.1976). On original hearing in Monroe we were prepared to reverse defendant's conviction because we believed the trial judge denied the defendant the right to inquire as to "* * * the prospective jurors' attitudes toward the presumption of innocence, * * *." We felt in view of the particular facts of that case that the judge's rulings were "especially prejudicial." On rehearing, after being provided a full transcript of the voir dire proceedings rather than the excerpted portions available to us on original hearing, we concluded, without disagreeing with the expressions of law contained in our original opinion, that the trial judge had in fact afforded a sufficiently wide latitude to the defendant in examining prospective jurors.
Again we are presented with a record of only isolated questions during the voir dire examination and are asked to reverse the trial judge because his rulings unreasonably restricted the defendant in obtaining information sufficient to exercise with intelligence and wisdom his peremptory challenges. Because La.Code of Criminal Procedure article 786 vests in the trial judge wide discretion to regulate the scope of voir dire examination, we will not ordinarily reverse his rulings unless we determine that he has abused that discretion by unreasonably limiting the scope of the examination. State v. Jones, 315 So.2d 650 (La.1975); State v. Scott, 307 So.2d 291 (La.1975). Therefore, a review of the trial judge's discretionary rulings should be undertaken only on the record of the voir dire examination as a whole, or at least upon the entire record of examination of the prospective jurors during which defendant contends such prejudicial curtailment occurred.
On the basis of the limited record before us, we are unwilling to hold that the trial judge's rulings in this case amounted to an abuse of his discretion.
For the foregoing reasons, we find that defendant's second and third assigned errors lack merit.
ASSIGNMENT OF ERROR NO. 5
Defendant contends the trial judge erred in ruling that Mr. Edgar Dunn, of the New Orleans Police Department crime laboratory, was qualified to give expert opinion testimony in the field of chemical analysis and identification of narcotics.
The trial judge's ruling that Mr. Dunn qualified as an expert is supported by the record. Mr. Dunn had a B.S. degree in biology, and lacked only one hour of having his degree in chemistry; he had been employed for two and one-half years by the police department crime laboratory, primarily in the narcotics section; he had previously been qualified as an expert in every section of the Orleans Criminal District Court and in two sections of the juvenile court; he had been specifically qualified as an expert in the field of heroin analysis and identification in Sections "I," "G," "J," "H," "A," and "C," of the Orleans Criminal District Court; he is a member of the Louisiana Association of Forensic Science, and attended several of their quarterly meetings to discuss drug problems and procedures; he testified that he kept up with recent trends in his field by reading specialized journals including the Journal of Forensic Science, and publications from the federal Bureau of Narcotics and Dangerous Drugs.
According to La.R.S. 15:466, the test of an expert's competency is his knowledge of the subject matter about which he is to testify. The trial judge must be satisfied that he is competent, and the judge's determination rests in his sound discretion. We will not reverse absent clear abuse. State *626 v. Traylor, 311 So.2d 847 (La.1975); State v. Thorson, 302 So.2d 578 (La.1974); State v. Ledet, 298 So.2d 761 (La.1974).
The trial judge in this case found the evidence sufficient to satisfy him that Edgar Dunn was an expert in the field of narcotics analysis and identification. We find no abuse in his ruling.
Defendant's fifth assigned error lacks merit.
ASSIGNMENT OF ERROR NO. 6
When Officer Arnold Jackson was questioned as to his qualifications as an expert in the field of narcotics "street usage," the trial judge intervened and asked several questions about his experience with narcotics addicts. After Jackson's answers, the trial judge indicated his own satisfaction with Jackson's qualifications and declared him an expert. Defense counsel objected "to the Court asking the witness on the stand the questions which were asked." Defendant now argues that he was prejudiced by not being permitted to traverse the officer's qualifications as an expert in "street use" of narcotics.
The ground presently urged for reversal was not made known to the trial judge at the time of his objection, and cannot properly be availed of for the first time on appeal. La.C.Cr.P. art. 841; State v. Richmond, 284 So.2d 317 (La.1973).
In any event the record supports the trial judge's ruling. Under La.R.S. 15:466 the trial judge is vested with discretion in determining the qualifications of witnesses tendered as experts, and we find no abuse of that discretion. e. g., State v. Thorson, supra.
Defendant's sixth assignment of error is without merit.
ASSIGNMENT OF ERROR NO. 8
Defendant assigns as reversible error the trial judge's ruling allowing the State, on rebuttal, to elicit from Officer Jackson part of the same testimony given by him on direct examination. Defendant relies principally on State v. Davis, 246 La. 383, 164 So.2d 589 (1964), in which we found prejudicial error in the trial court's refusal to grant defendant's motion for bill of particulars; its permitting the State to recall two deputy sheriffs to repeat negative testimony which they had given in chief; its permitting the assistant district attorney to relate to the jury during his closing argument his personal participation in the taking of defendant's confession; and its permitting the district attorney, who did not try the case, to make a personal plea to the jury for the conviction of the defendant. Thus, the repetition of testimony on rebuttal was merely one factor causing the court to reverse in Davis and it occurred within an entirely different setting than the testimony complained of by defendant here.
In the present case Officer Arnold Jackson testified on direct examination to the events leading to the defendant's arrest, including the arrest of Charlene Saia. The defense called Ms. Saia to the stand, and she testified that she had not been inside the residence at 619 General Taylor Street on the date of defendant's arrest. In rebuttal the State recalled Officer Jackson and in response to questions propounded to him by the State's attorney, and over a timely defense objection which the trial judge overruled, Officer Jackson repeated his version of Saia's arrest as he had given it on direct examination.
Though the police officer's testimony was repetitious and perhaps error, it was not reversible error; he merely adverted to evidence already properly admitted. Thus, the repetition did not "prejudic[e] the substantial rights of the accused." La.C.Cr.P. art. 921; State v. Major, 318 So.2d 19 (La.1975).
This assignment of error is without merit.
For the foregoing reasons, defendant's conviction and sentence are affirmed.
AFFIRMED.
SANDERS, C. J., and SUMMERS and MARCUS, JJ., concur.
*627 DIXON, J., dissents with reasons.
TATE, J., dissents, for reasons assigned by DIXON, J.
DIXON, Justice (dissenting).
I respectfully dissent.
The question in this case is not one of retroactivity of a constitutional provision newly found by a supreme court. (See State v. Rester, 309 So.2d 321 (La.1975)). The question is whether a right granted a defendant in the 1974 Louisiana Constitution is now available to her. The question is whether the 1974 constitutional provision, Article 1, § 5, which gives any person adversely affected by an illegal search and seizure "standing" to raise the exclusionary rule in her appeal in this court.
To say that the defendant, in a case not final, is denied the constitutionally granted right to exclude illegally seized evidence is to disregard state and federal constitutional guarantees of equal protection.
There is a great difference in the retroactive application of newly enacted procedural and substantive rights and the question in this case; that is, is the constitutional provision concerning "standing," in existence since January 1, 1975, available now to a litigant in this court in a case which has not yet reached finality?
The exclusionary rule of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) and Article 1, § 5, Louisiana Constitution of 1974, goes to the integrity of the system of administering criminal justice, and, at the very least, should be available in those cases not final.
NOTES
[*] La.Const. Art. XIV, § 26 (1974) provides:

"Section 26. Except as otherwise specifically provided in this constitution, this constitution shall not be retroactive and shall not create any right or liability which did not exist under the Constitution of 1921 based upon actions or matters occurring prior to the effective date of this constitution."